The next case on our calendar is United States v. Brian Folks. Good morning, Your Honor. May it please the Court. Michelle Bars for Mr. Folks. Thank you. You may proceed. Thank you. I'd like to begin with the warrant issues this morning. In this case, the government sought a warrant at the Burlington residence because it believed it was a trap house for drug trafficking. That warrant, in attachment B, authorized the seizure of many items purporting to relate to drug trafficking. Specifically, it did not include authorization to seize computers. What about, it does say, this is an unusual provision, I guess, I haven't seen it before, but it does say that you can seize evidence that shows expenditures of proceeds, drug proceeds on personal property, including jewelry and electronics. So why isn't a computer electronics under that term? Well, if you look at paragraph C, the word electronics is in a paragraph that's all about seizing evidence of wealth from drug trafficking, such as jewelry. So what would that allow the agents to take? Well, electronics is meant to cover something like inexpensive flat screen TV or video games. The computer tower that we're seizing. Those determinations, if a warrant says you can seize electronics because they could represent drug proceeds purchases, they're going to have to look at the TV and value it versus a computer. Those are the decisions that agents have to make when they're executing a search warrant. Well, I think they would have to make that about jewelry or, you know, stack of cash, too. I think those are the sorts of determinations that agents make all the time. So you would say if they took jewelry and it turned out that the watch was only $100, that would have been unauthorized under the search because it wasn't a $1,000 watch? No, that's not the argument that I'm making. I'm saying that electronics are meant to cover items that would represent wealth from a drug trafficker's trade. But you believe that a computer is an electronic device, don't you? I suppose it could fall into that category. You suppose? But computers are. You only suppose? I only suppose. Go ahead. I'm sorry. Finish your sentence. That's okay. This Court treats computers differently. And Ganias explained that we exercise greater caution when examining the particularity requirement as applied to computers because of the significant privacy interests at stake. And I think it's important to recall that the government made this same argument before the district court, and it was not a successful argument. Don't you think it's also strange that in E, it authorizes the agents to seize passwords necessary to access data contained on cell phones, smart phones, and other electronic items to be seized? Wouldn't an agent look at that and say, well, I'm allowed to seize the passwords for other electronic items, but I can't seize the electronic item? Isn't that strange? It authorizes the seizure of electronics, but it does not specifically authorize the seizure of computers. Computers were left off of this warrant. And, again, the district court denied the motion to suppress based on the plain view doctrine only. The government made this same argument before the district court, and it was not successful. And we know that, at least in the District of Vermont, when the government seeks computers, it lists computers on the warrant. We had another warrant that was issued in this case in which the government specifically listed computers because of the tie it had to the sex trafficking investigation at a different property. And this court confronted a similar factual scenario in Berchanski, in which an issuing judge permitted a warrant of one apartment. The agent searched another that was substantially similar, and this court said, no, you don't get to bait and switch the issuing judge. If you compare the two warrants, between the Winooski warrant and the Burlington residence warrant, you can see some differences between them. And the chief difference is, in one warrant, the issuing judge allowed the agents to seize a computer because it was justified based on law enforcement's investigation. And at the time of the seizure at the Burlington residence, the law enforcement investigation did not support the conclusion that a computer was used in any drug crime at the Burlington residence. The investigation in this case did not convey any reason to think that Mr. Folks kept a computer at the residence at all. But once they're on premises, I think it's undisputed that they have learned from Danielle, who is also there, that the computer they're seizing belongs to Mr. Folks, right? And so the warrant for the Burlington premises presumably omit, you know, there's a good reason why it omitted computers. Presumably it's because the agents didn't have probable cause to believe that Mr. Folks's computer is going to be located on that premises. But once they're on premises and they see a computer that they are told is his, why doesn't the plain view doctrine kick in there on the theory that all of the records that are already authorized to search for are overwhelmingly likely to be found on that computer? Because the judge did not authorize the seizure of a computer, and the crime that was being investigated at the Burlington residence was drug trafficking only. The investigation in this case did not convey any reason to think that Mr. Folks kept a computer at the Burlington residence. And you need to have that nexus between the item seized and the place that it's going to be seized from. And they asked for the seizure of a computer from the Winooski residence because they had sufficient probable cause to do so. They did not do so with the Burlington residence because they lacked probable cause. So imagine the following hypo. Imagine the government goes to the magistrate judge and says, we have probable cause to believe that this defendant or this target is selling drugs out of premises A and selling stolen diamonds out of premises B. And so we'd like a warrant to go seize drugs from A and seize the diamonds from B. And then when they get on premises A where they're looking for drugs, they see a big bag of diamonds. And they've already told the magistrate judge they have probable cause to believe that this defendant is involved in that type of crime. Aren't they entitled to seize the diamonds under the plain view exception now that they know they're there? Well, I have a couple of responses to that, Judge Committee. First, the court confronted a similar factual scenario in Verchansky. And in Verchansky, the issuing judge permitted a warrant for one apartment, and the agents searched another that was substantially similar and matched the description. The agents entered that second apartment under the authority of that first warrant. When they went to apartment B, they found a computer there. The issuing judge had issued the warrant for apartment A. Isn't that distinguishable in that they're in a place they have no authorization to be in the first instance? They just went into the wrong premises. In some ways, it's not a perfect factual match, but it is about judicial authorization. And when you're talking about a bag of diamonds, you have a very specific item that you're looking for. A computer is inherently different. There are much greater privacy interests when you are seizing someone's computer. A computer is practically an appendage to one's body. It contains a wealth of information that the government ordinarily would not be privy to. So the computer is a more innocuous item than, in your hypothetical, the bag of diamonds. So I don't think that you can take judicial authorization for one apartment, transpose it to another apartment, and take something that you were not authorized by the issuing judge to seize. Counsel, you have two minutes for rebuttal. Thank you. We'll hear from the government. Good morning, counsel. Good morning, Your Honors. May it please the Court, Barbara Schwabauer from the United States. This Court should affirm folks' conviction on charges of drug and sex trafficking. I plan to talk about both the computer challenge and the claims of prosecutorial misconduct, but I want to start with the issues regarding the Burlington Residence Warrant. This computer seizure was within the scope of the Burlington Residence Warrant, and the officers acted reasonably by securing the computer and not searching it until they obtained a second warrant to do so. This Court can find that the computer seizure was authorized on either of two bases. First, under the warrant's authority for the seizure of electronics that evidenced the proceeds of drug trafficking, and again, consistent with that authority, the officers merely seized the computer but did not search it. Similarly, the warrant authorized the seizure of the computer to secure its contents as a logical container for the types of documents and records in the warrant that could be found in digital format. Why was the word computers omitted from the Burlington Warrant? What does the record reveal on that subject? There's nothing in the record that conclusively determines why the word computers is omitted in the warrant. It wasn't included in the warrant application for that residence, and we can't draw any conclusions from the Court's decision to authorize it for the Winooski Warrant versus the Burlington Residence Warrant since it was not specifically sought. But in looking at the affidavit supporting the warrant, the only significant difference between the two residences is that the officers believed that Mr. Fogbes was staying and residing at the Winooski Residence and that he was not residing at the Burlington Residence. But the Winooski Warrant can't tell us what this warrant authorizes because we have to look to the text of the warrant to do that, and that's what this Court instructs us to do in Braschanski. Wouldn't we be expanding the Plainview Doctrine beyond to a place where we've never gone before if we were to conclude, as the district court did, that let's say the word electronics wasn't in the warrant. No reference to electronics. So you go into a house and you see a computer. You know, you're looking for drug records. You didn't ask for computers or electronics. You see a computer. It's the government's position, and the district court adopted it, that under the Plainview Doctrine you could just take the computer. But the Plainview Doctrine traditionally has been that it's incriminating on its face. So I think that's extending Plainview beyond where we have ever gone. Do you agree or disagree? I disagree with that. Which case have we said that if you go into a house and it's not in your warrant, if you see some type of computer, you can take all electronics, even though it's not in the warrant under the Plainview Doctrine? Which case has said that? So in U.S. v. Babylonia, this Court made clear that even everyday objects like a computer or a cell phone can be permissibly seized under the Plainview Doctrine, where officers have probable cause to believe that the computer would constitute or contain evidence, and that's the case here. Well, the idea of Babylonia was that they would immediately, they might seize it temporarily to get a warrant to open it. So if you see, in my scenario, you see a computer, your warrant doesn't have computers in it, so you obviously don't have to give it to the person. You want to get a search warrant. So you temporarily seize it, and you get another warrant. That includes the computer and allows you to look inside. But that's not what happened here. This was six months later. So if it was not authorized initially, that's not the Babylonia. We didn't suggest in Babylonia that you just take all the computers and just hold on to them for as long as you want. Right? That's correct. There is certainly a concern about a delay when you have a warrant for seizure. However, that concern is not present here, where the defendant was in custody during the time period of the delay.  They have a virtually nonexistent possessory interest, which is the central interest at play with respect to a seizure. Now, the government maintains that the computer was permissibly obtained within the scope of a warrant, but to the extent that it was seized, they had sufficient probable cause, and they acted reasonably by not searching the computer until obtaining a second warrant in this case. I'd like to ask you about the prosecutorial misconduct claims. The government concedes, I think, that the repeated references to asking the defendant when he testified, is this person lying, is that person lying, was improper. And I was concerned by that type of questioning in the case. Is the prosecutor not aware of the well-established law that you can't do that? The government agrees that those types of questions are improper, and there's no question about that. The issue here is whether or not those questions were substantially prejudicial to the defendant, and here they simply were not. This Court has not frequently found substantial prejudice from such questions in the absence of the starkly offensive prosecutorial delinquencies that occurred in Richter. And in Richter, the government essentially manufactured the defendant's accusation that a law enforcement officer witness was lying, then bolstered that first witness by calling the second law enforcement officer witness to testify to the same facts, and then in closing arguments emphasized that these two officers were accused of lying. What about saying we didn't think that Mr. Folks' testimony was very credible? I mean, these are like basic things that I think every prosecutor knows you can't do. I understand it has to be at a certain level in order to get a new trial, but I was extremely surprised to see those things in the record. Is there an explanation? Well, I think the vast majority of it, there is some explanation here, Your Honor, which is the vast majority of the challenge comments came in rebuttal summation in response to comments made by defense counsel impugning the integrity of the government's case. And this Court has permitted prosecutors some leeway, particularly in rebuttal, which is improvisational, to make comments that rise to the occasion. I think in that context that this conduct was not so severe and substantially prejudiced the defendant. Indeed, it is the defendant himself who has injected the accusations of lying into the trial. This isn't something where the government injected this idea. Indeed, this is Folks' entire theory of the case. I know, but there's a difference between saying it's certainly permissible in a rebuttal for a prosecutor to say for you, you know, you would have to, you, the members of the jury would have to believe all these witnesses were lying. That's different from obviously putting those questions to a testifying defendant. So I understand your point that there were a lot of arguments by defense counsel regarding the witnesses lying, but the response to that is not to reference the defendant's testimony.  Yes. Yes, Your Honor. I think the question is we don't disagree at all that these questions were improper or were they lying questions. They certainly were. But whether or not they substantially prejudiced the defendant is the issue here on plain error review. And they simply did not. Again, because this is whether or not the defendant was accusing these women, the sex workers and women who worked in the drug trafficking organization of lying is central to the defendant's defense. This is an argument he himself made, and he cannot be substantially prejudiced by an argument that he himself is making. So to the extent that the conduct is simply just not that severe in light of the fact that this is his own argument. And, again, with respect to whether or not it's substantially prejudicial, we can look at the reasonable probability that the error had no impact on the trial here because of all the corroborating evidence with respect to the drug charges and the sex trafficking charges here. There's plenty of corroborating testimony and other evidence that supports the drug conspiracy and the quantity of drugs that are not subject to any of the alleged improper remarks here. There's also testimony from law enforcement officers and confidential sources about four controlled buys that occurred and other drug seizures. And there's also audio and video and physical evidence from those controlled buys and seizures, including a phone recording with Chrissy T. that connects folks to the large quantity of drugs recovered from her apartment and supporting the conspiracy charge. And, finally, there's his own admissions about buying and selling drugs. Looking at the sex trafficking charges, folks made several admissions about his involvement in the women's sex work, including being involved in providing feedback on the ads they were placing on Backpage. There were photos on his computer from the Backpage ads that he was alleged to be involved with. There were also hotel receipts and phone records and exhibits from evidence and videos supporting the mistreatment of the women that they claimed occurred in this case. And there's his own admissions about how he treated the women's drug habits and that he did withhold drugs from them. For all of these reasons, there's no reasonable probability that the error affected the outcome of the trial here. Thank you. If there are no further questions, the United States raised some remaining arguments in its brief and respectfully request that this Court confirm. Thank you. Michelle Barth, you have two minutes for rebuttal. Thank you, Your Honor. The government's chief defense is to minimize its misconduct. The record speaks for itself on that front. The prosecutor's strategy here was clear. It was to make Mr. Folks brand all of its witnesses liars and then, in closing, point out that Mr. Folks accused them all of being lying hussies. That is a gross mischaracterization of the defense. It wasn't an invited response by defense counsel. Defense counsel did not commit misconduct. Defense counsel vigorously cross-examined witnesses. He did not ask one witness to opine about the credibility of another witness. So the invited response doctrine has no application here based on this record. I know. But the question is whether it's so severe that it potentially affected the outcome. And you heard the government's response first regarding the evidence. And also, the nature of that, you heard my questions to them. It should never happen. But it would come as no surprise that the answer of your client is yes, they are lying. Of course, his testimony would diametrically oppose to theirs. I understand it was a rhetorical mechanism to use in the summation, but the question is did it affect the case in any substantial way? What's your answer to that? Without a doubt, it affected the case in a very substantial way. Without testimony, the government's digital data did not prove force and just as easily supported a voluntary prostitution arrangement. This was a very close case, and it really boiled down to how the jury was going to resolve the conflicting testimony. The government's digital evidence had no independently criminal character. So that's kind of a red herring. For example, the photos on the computer tower and then the recovery of similar photos on backpage.com does not establish forced sex trafficking. Folks testified that he helped some of the women take pictures and post back page ads as part of their 50-50 arrangement. He also admitted to providing them cell phones, food, clothing, transportations to and from their dates and lodging. So the jury had to choose between witnesses in order to give context to the back page ads. Folks testified that he took graphic videos and photos for his pornography business. He paid the women for their pornography work with commodities they wanted without paying for them. Only testimony informed the jury how that material should be interpreted. Likewise, the government's phone, Facebook, and text records do not establish forced sex trafficking. Only the witness testimony informs how that evidence should be interpreted. And I also think it's important to point out that the volume of the digital evidence also acted to undermine the government's case. For example, Ayla testified that she had sex with Folks in exchange for heroin and that Mr. Folks attempted to blackmail her by posting derogatory information about her online. But there was no digital evidence to corroborate Ayla's allegations, despite the government's access to all of Mr. Folks's online activity. And the misconduct in Richter, the case that the government finds most applicable, required reversal. And the where-they-line questions in Richter were on plain error review. So here, there was a large volume of improper questioning, flagrant vouching, where the government used words like, I, the federal prosecutor, and we, the Department of Justice, think that Mr. Folks's testimony is not credible. And then they have a closing argument that is centered on the defendant says everybody is a lying pussy. This was misconduct. But it was also the prosecutor putting his thumb on the scale. The prosecution team put their thumb on the scale and engaged in this kind of conduct because it had doubts about its case. There's no other explanation for that. They were there. They saw the witnesses testify. They were concerned that the witnesses were not credible, and they were willing to engage in this risk-taking. Thank you. Thank you.